No. 13272

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE DEPARTMENT OF REVENUE OF
THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

SOO LINES, INC.,

Defendant and Respondent.

---

Appeal from: District Court of the First Judicial District,
Honorable Peter G. Meloy, District Judge

Counsel of Record:

For Appellant:

R. Bruce McGinnis argued, Helena, Montana
Robert A. Poore argued, Butte, Montana

For Respondent:

Hughes, Bennett and Cain, Helena, Montana
George T. Bennett argued, Helena, Montana

---

Submitted: January 17, 1977

Decided: FEB 8 1977

Filed: FEB 8 1977

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This appeal from the district court, Lewis and Clark County, involves the validity of the Montana Department of Revenue's method of assessment of taxes on the Montana property of an interstate railroad. The state tax appeal board (STAB) and the district court held the method of assessment used by the Department of Revenue (DOR) invalid, and assessed respondent Soo Lines, Inc. Montana property at its salvage value. We reverse.

Soo Lines is a Minnesota corporation engaged in railroad operations in seven mid-western states, including Montana. In Montana, Soo Lines owns and operates a spur line which consists of approximately 60.5 miles of track, together with supporting equipment and facilities. This spur line known as the Flaxton Branch, enters Montana from the east and runs west through Sheridan and Daniels Counties. In light of the intercounty nature of the Soo Lines' Montana operation DOR directly assessed its Montana property. The method of assessment used by DOR is the issue on appeal.

The general method of assessment used by DOR to assess Soo Lines, as well as all other intercounty railroads in Montana, is the unitary method. The unitary method of assessment is designed to calculate the value of the railroad's operating property in Montana on the basis of its value as a part of the railroad's total interstate system.

DOR derives its authority to directly assess all intercounty railroads from Title 84, Chapter 8, R.C.M. 1947. Pursuant to section 84-801, R.C.M. 1947, Soo Lines furnished to DOR its annual statement of earnings, costs, stock, and debt information. Using this annual statement, DOR assessed the railroad's property by use of the unitary method whereby a three-factor formula of

stock and debt, cost of plant, and capitalization of income was employed. Each of these three factors was used to determine a total system value:

| Indicator of Value | Total Railroad System Value |
| --- | --- |
| Stock and debt | $143,232,249 |
| Plant at cost | $269,491,266 |
| Capitalized net income | $176,383,139 |

The next step was to formulate a composite of a total system value by "weighting" each of the separate indicators of value by percentages which total 100%. The weighting system is based on the type of industry and general economic conditions. For 1974 the weighted factors were: 30% for stock and debt, 35% for plant, and 35% for capitalized income. By weighting the foregoing indicators at 30%, 35%, and 35% respectively, a total system value of $199,025,716 was obtained.

The next step in the assessment procedure involved allocation of a proper portion of this system value to Montana. Using the information supplied to DOR by Soo Lines in its annual statement, DOR compared Montana-vs-system gross earnings; Montana-vs-system revenue traffic units; Montana-vs-system car and locomotive mileages; and Montana-vs-system depreciated investment. Using a straight average of all four indicators, DOR determined that Montana made an economic contribution of .2% (.002) to the total system values.

The weighted system value of $199,025,716 was then factored by the respresentative Montana portion of .2% (.002) and an allocation of values to the Montana operating properties of $398,051 was obtained. That figure was equalized at 40% to obtain an assessed value of Soo Lines' Montana operating properties of $159,221.

Soo Lines objected to the foregoing assessment on the

- 3 -

grounds it was unrealistic in view of the fact that such a small portion of Soo Lines' property and business activity was located in Montana. Soo Lines further complained the use of the unitary method of assessment resulted in Montana taxing the railroad's out-of-state properties. The railroad suggested the following changes be made in DOR's assessment scheme:

(1) Cost of plant as an indicator of value should be totally eliminated and only stock and debt and capitalized income used.

(2) Capitalized income should be averaged over a five year period rather than the two year period currently used and further the income be capitalized at 10% rather than the current 8.25%.

(3) Stock and debt and capitalized income should be given equal weight when used as indicators of total system value.

(4) The apportionment ratio should be determined on a five year comparison of Montana-vs-system, rather than the current one year comparison.

(5) In the use of stock and debt as an indicator of value, the stock should be valued on a five year market average rather than the current year's value and nonoperating property should be subtracted at its market value rather than book value.

A hearing before DOR was held at the railroad's request and resulted in refusal to alter the assessment. Soo Lines appealed to the state tax appeal board (STAB). STAB reversed the DOR assessment and remanded the case for reassessment. STAB found error in DOR's failure to: (1) deduct from the stock and debt value the market value of nonoperating properties rather than the book value, (2) properly recognize plant obsolescence, and (3) recognize the special characteristics of the Flaxton Branch, and thereby allocate .2% (.002) of Soo Lines' system value to

- 4 -

Montana. The unitary method of assessment was ordered modified to attain the foreordained result of salvage value not to exceed $2,000 per mile.

DOR then sought review of the STAB decision in the district court, and asked the court's permission to introduce additional evidence on the amount of revenue that originated on the Flaxton Branch. Prior to the district court hearing, Soo Lines filed a series of admissions of facts which stated the amount of wheat in terms of weight that had originated on the Flaxton Branch. The district court refused to allow DOR to produce the additional evidence and ordered the assessment of Soo Lines' Montana property at a salvage value of $2,000 per mile or $121,060. DOR appealed to this Court.

The issue on appeal is a determination of the proper method of valuation of Soo Lines' Montana operating properties. The use of the three-factor, unitary method of assessment of the local property of an interstate corporation is hardly novel in this jurisdiction. This method has been approved by this Court repeatedly and as recently as December 29, 1976. Department of Revenue v. Pacific Power and Light Co., ____Mont.____, ____P.2d____, 33 St.Rep. 1277; Western Airlines, Inc. v. Michunovich, 149 Mont. 347, 350, 351, 428 P.2d 3; Yellowstone Pipe Line Co. v. State Board of Equalization, 138 Mont. 603, 611, 358 P.2d 55.

The general purpose of the unitary method of assessment is clearly stated in Western Airlines, Inc.:

> " * * * The 'unitary' method represents an
> attempt to realize a fair assessment value on
> property which is not habitually located in any
> given state, but which is used extensively in
> interstate commerce. The underlying philosophy
> of the 'unitary' method is that property so used
> forms a part of an organic system and may be
> assessed in terms of the economic contribution
> which each component makes to the entire system.
> This approach has been firmly established in a
> series of decisions of the Supreme Court of the
> United States. * * *"

The railroad urges this Court to hold the salvage value of the rails, ties, and roadbed is the appropriate measure of the value of the Flaxton Branch. Soo Lines admits the effect of its request would be to create an exception to the established statutory scheme in regard to the assessment of intercounty railroad property. This request is justified, it claims, by the special characteristics of the Flaxton Branch.

This contention is without merit. There is no evidence the Flaxton Branch is abandoned or scheduled to be abandoned in the near future. In fact in the year in question the shipment of 141,707 tons of wheat originated on the branch line. The Union Pacific Railroad's operation in Montana is similar to that of the Soo Lines; its only Montana property is a spur line. The unitary method of assessment is used there as well. It is clear from Montana law that members of a class must be given the same tax treatment. Peter Kiewit Sons' Co. v. State Board of Equalization, 161 Mont. 140, 505 P.2d 102.

If we were to value its property as Soo Lines would have us do, we would be completely eliminating the value of the railroads' franchise and rolling stock, in direct conflict with section 84-802, R.C.M. 1947, which provides in pertinent part:

> "The state department of revenue must assess
> the franchise, roadway, roadbed, rails, and
> rolling stock of all railroads operated in
> more than one county." (Emphasis added.)

The cases interpreting the statutes dealing with the taxation of interstate entities demonstrate the reason that the unitary method is the most equitable method of assessing intercounty railroads. This Court stated in Western Airlines, Inc.:

> "Thus the 'unitary' method determines not only the
> appropriate share of the entire enterprise which
> may be taxed by each state but also determines
> the 'enhanced value' attributable to the equipment
> used by virtue of its being a component part of the
> system. The 'unitary' method assumes that the value
> of the entire system, as a going concern, is somewhat

greater than the total fair market value of its equipment."

A similar statement is found in <u>Yellowstone Pipe Line Co.</u>:

" * * * Where property is part of a continuous system which extends through many taxing districts, the proper way to find the true cash value of any part of this property requires that the system as a unit be evaluated. The rationale of this theory is that, where a system is involved, the sum of the value of the parts of the system does not truly represent the total value thereof, and therefore, in order to get a true reflection of the economic value, the system as a whole must be valued as a unit."

In summary, the unitary method of assessment is an equitable means to value the local property of an interstate entity. This method should be applied in the instant case for these reasons:

(1) Soo Lines' rolling stock has a taxable value. The kind and quantity present in the state at any given time is not constant and therefore impossible to tax equitably by the method suggested by Soo Lines.

(2) The franchise has a taxable value which is not included in salvage value.

(3) The value of the Flaxton Branch to the Soo Lines' interstate system is greater than the salvage value of its components.

We have carefully examined other issues assigned for review and find them to be without merit.

We order the assessment of the DOR be reinstated with one change. In the computation of the stock and debt indicator of value, the deduction for nonoperating property should be expressed in fair market values rather than book values. This would change the total weighted system value from $199,025,716 as originally calculated to $196,036,976. The .2% (.002) allocated to the Montana segment would then become $392,073.95 and when equalized at 40% would yield an assessed value of $156,830 rather than

$159,221.

Judgment is entered accordingly.

_____
                                    Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 8 -